# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS
LIABILITY LITIGATION (NO. VI)     MDL 875

| | |
|---|---|
| EMMETT WINGFIELD | : |
| v. | : |
| | :    EDPA |
| GEORGIA-PACIFIC CORPORATION, et al. | :    Civil Action No. 09-75119 |

## MEMORANDUM ORDER

AND NOW, this 3rd day of June, 2011, upon consideration of the Motion to Exclude the Deposition of Emmett Wingfield, III (Doc. 93) filed by John Crane, Inc.,[1] and joined by Warren Pumps, Inc. (Doc. 119), General Electric Co. (Doc. 129), Georgia Pacific Corporation (Doc. 139) and Crane Co.,[2] (John Crane, Inc., Warren Pumps, Inc., General Electric Co., Georgia Pacific Corporation and Crane Co. hereinafter collectively referred to as the "Moving Defendants") and plaintiff's response thereto (Doc. 124), it is hereby

## ORDERED

that the motion is **GRANTED** with respect to the Moving Defendants.

Plaintiff filed an action in the Superior Court of Fulton County, Georgia, on July

---

[1] At oral argument on this motion and certain of the summary judgment motions filed in this case, counsel for plaintiff and John Crane Inc. represented to the court that defendant John Crane Inc. was to be dismissed from the case. Accordingly, counsel for Georgia Pacific, LLC argued the present motion on behalf of the Moving Defendants. The claims against defendant John Crane Inc. subsequently were dismissed with prejudice by Order dated April 8, 2011 (Doc. 177).

[2] Although Crane Co. did not file a formal joinder to John Crane Inc.'s motion to exclude the deposition testimony of Mr. Wingfield, Crane Co. argued in its motion for summary judgment and reply brief that Mr. Wingfield's testimony is inadmissible and sought to incorporate by reference the arguments of John Crane Inc. for the exclusion of Mr. Wingfield's testimony. See Doc. 109 at n.8. and Doc. 148 at 6-7.

3, 2003, alleging injuries to Emmett Wingfield, III, caused by his occupational exposure to asbestos-containing products manufactured, sold and/or supplied by the various defendants in this case. Mr. Wingfield was deposed on July 25 and August 1, 2003. The deposition on July 25, 2003 was a videotaped, direct examination conducted by plaintiff's counsel. This deposition was taken prior to a discovery deposition. At the end of the videotaped deposition, defense counsel objected to the use of the videotaped deposition at trial unless and until the defendants conducted a cross-examination of Mr. Wingfield through a discovery deposition as well as a videotaped cross-examination. A partial discovery deposition was conducted on August 1, 2003, but, due to Mr. Wingfield's deteriorating condition, it was adjourned before the defendants completed the cross-examination. See Doc. 124, Ex. B at 80-85. Mr. Wingfield passed away on August 4, 2003. (Doc. 124, Ex. B.)

The Moving Defendants assert that Mr. Wingfield's videotaped deposition testimony should be excluded because it is inadmissible hearsay.[3] Federal Rule of Civil Procedure 32 provides an exception to the hearsay rule and permits the use of deposition testimony at trial if, inter alia, the deposition would be admissible under the Federal Rules of Evidence if the deponent were present and testifying. Fed. R. Civ. P. 32(a)(1)(B).

Furthermore, Federal Rule of Evidence 804(b)(1) provides that, as an exception to the hearsay rule, former testimony of an unavailable witness is admissible if it is:

> [t]estimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now

---

[3] "Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment." Smith v. City of Allentown, 589 F.3d 684, 693 (3d Cir. 2009).

offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Fed. R. Evid. 804(b)(1).

The Third Circuit has explained that "[i]n order for former testimony to be admissible as an exception to the hearsay rule: (1) the declarant must be unavailable; (2) testimony must be taken at a hearing, deposition, or civil action or proceeding; and (3) the party against whom the testimony is now offered must have had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Kirk v. Raymark Indus., Inc., 61 F.3d 147, 164 (3d Cir. 1995). The first and second prongs of the test are not at issue in this case. The only issue before the court is whether the Moving Defendants had an opportunity to develop Mr. Wingfield's testimony by cross-examination.

Mr. Wingfield's deposition testimony does not qualify under this hearsay exception because the Moving Defendants simply did not have the opportunity to cross-examine Mr. Wingfield prior to his death. See Tracinda Corp. v. DaimlerChrysler AG, 362 F. Supp. 2d 487, 503 (D. Del. 2005) (finding the deposition testimony at issue admissible under Rule 804(b)(1) as former testimony because the testimony had guarantees of trustworthiness as it was given under oath and defendants had the opportunity to test the accuracy of the deponent's statements). See also U.S. v. King, 713 F.2d 627, 630 (11th Cir. 1983) ("In order for Rule 804(b)(1) to apply the opportunity to cross-examine must be 'adequate,' or 'meaningful'; however, it need not be unbounded.").

The record shows that the July 25, 2003 videotaped deposition commenced at 9:54 a.m. (Doc. 124, Ex. A at 15.) At the time of the deposition, Mr. Wingfield was on a variety

3

of medications for his illness. Mr. Wingfield's counsel questioned Mr. Wingfield until 10:20 a.m., when a twenty minute break was taken. (Doc. 124, Ex. A at 42.) After the break, it was noted that Mr. Wingfield was offered morphine for his pain, but he declined to take it. Id. at 42. The deposition continued for approximately fifty more minutes, but then adjourned for a ninety minute lunch break. Id. at 107-08. When the parties reconvened the deposition, Mr. Wingfield's counsel stated that Mr. Wingfield's family and his hospice nurse advised the parties that Mr. Wingfield "has had about enough today." Id. at 108. Counsel spent the next ten minutes placing defense objections on the record. Id. at 108-16. Defense counsel objected to the use of the videotaped deposition at trial, in part, because no opportunity for discovery deposition had been provided prior to the trial deposition. Id. at 113. The direct videotaped deposition was adjourned at 1:16 p.m. Id. at 117.

Subsequently, the discovery deposition was conducted on August 1, 2003. See Doc. 124, Ex. C at 48-85.[4] At the commencement of the deposition, Mr. Wingfield was asked if he was capable of testifying:

> Q. Mr. Wingfield, did you take some medication this morning with regard to your health?
> A. I think I took one pill, but I can't tell you what it is.
> Q. How is your memory today?
> A. Today?
> Q. Yes, sir.
> A. Oh, it's all right.
> Q. Do you feel able to listen to my questions and give all of the attorneys here answers today?
> A. I do.
> Q. Do you know if your medication affects your memory?

---

[4] It appears that the discovery deposition may have commenced the afternoon of July 25, 2003 and proceeded for a short time, but a transcript of this testimony was not included with the present motion or response.

>     A. I don't think so.

(Doc. 124, Ex. C at 50.) Defense counsel then questioned Mr. Wingfield for approximately fifty minutes, asking him generally about his work history, including his service in the Merchant Marines, his work at the Newport News shipyard, and his work at Rust Engineering. Id. at 49-80. At that time a break was taken. Counsel then placed the following statement on the record:

> Ms. Techman: Well, this is Jennifer Techman. I'm here on behalf of the defendants. We are taking this deposition by agreement and without the court's permission before discovery has begun in this case. Out of respect for the request of plaintiff's counsel and in recognition of the health of Mr. Wingfield, at this time we have serious concerns that Mr. Wingfield's condition has deteriorated considerably even over the course of the morning such that we are not willing to go forward. I understand that Mr. Keahey, plaintiff's counsel, wants to ask several more questions. Defense counsel are not present because we are waiting to make a statement outside of plaintiff's home to explain our concerns, and that we are adjourning the deposition. I understand counsel intends to ask his questions anyway. I just want to make a record that the questions are being asked out of the presence of defense counsel and over objection.
>
> Mr. Keahy: This is Pat Keahey. Emmett, do you feel like answering about four or five of my questions real quick, and then we'll stop?
>
> The Witness: Yes.

Id. at 81. Plaintiff's counsel then asked Mr. Wingfield several questions on the record. Id. at 81-83.

> Defense counsel again made a statement on the record:
>
> Ms. Techman: Jennifer Techman, again for the defense counsel, just continuing the statement that I started in the Wingfield home, that the defendants are withdrawing their agreement to go forward with the deposition and have concern that Mr. Wingfield is no longer in a position to answer our questions. He seems to be closing his eyes, seems to be in quite a bit of discomfort. His caregivers here at the house tell us that he is taking morphine. We're just doubtful about his ability to continue throughout the day today. The record will speak for itself, but by my estimation there were probably at least thirty defense counsel here, each of whom have indicated they have some cross-exam questions for Mr. Wingfield.

> So we are adjourning without having had an opportunity to cross-examine him with regard to the testimony he gave in his evidentiary deposition approximately a week ago. We consented to the evidentiary deposition with the expressed understanding that we would have an opportunity to cross-examine him, and we certainly understand that plaintiff's counsel is going to try to give us that opportunity. It's just not going to be possible today. So we are adjourning. Given Mr. Wingfield's health, it might be advisable that we get a statement from a doctor or some of his medical caregivers with regard to whether he is able to go forward to continue this deposition at some later date. I welcome any of the defendants to chime in.
>
> Ms. Shofner: This is Elaine Shofner for a number of defendants. In doing some of the cross-examination and trying to elicit information, it became clear that he was very unresponsive and did not comprehend some of the questions and was not able to give any meaningful answers to those questions. At that time we then expressed these concerns that have been put on the record.

Id. at 83-85. The deposition was adjourned and Mr. Wingfield passed away three days later, less than two months after his diagnosis of mesothelioma and one month after he first filed his lawsuit.

Although plaintiff's counsel did not unilaterally adjourn the deposition on August 1, 2003, it is apparent from the transcript that defendants could not meaningfully cross-examine Mr. Wingfield. The court finds reasonable defense counsel's concern on August 1, 2003 that Mr. Wingfield was not able to provide cogent responses to the questioning in light of his health. Furthermore, defense counsel were advised by Mr. Wingfield's family and caregivers that he had been administered morphine that day. The record demonstrates that as a result of Mr. Wingfield's deteriorating condition, defendants did not have the opportunity to develop Mr. Wingfield's testimony by meaningful cross-examination. The requirements of Rule 804(b)(1) were not satisfied in the case at bar.[5]

---

[5] In his response, plaintiff contends that defendants have waived any objection to the admissibility of the depositions of Mr. Wingfield because almost seven years have passed

Accordingly, the Motion to Exclude the Deposition of Emmett Wingfield, III (Doc. 93) filed by John Crane, Inc., and joined by the Moving Defendants is **GRANTED** with respect to the Moving Defendants.

BY THE COURT:

_/s/ Thomas J. Rueter_____
THOMAS J. RUETER
Chief United States Magistrate Judge

---

between the time of the deposition and the filing of the motion to exclude. (Doc. 124 at 2-6.) This court is not persuaded by this argument and is not aware of any relevant support for this argument in Third Circuit case law, nor has plaintiff provided any.